MARION F. McCLENAHAN *vs.* WALTER McCLENAHAN.

DIVORCE—GROUNDS—"EXTREME CRUELTY".

A husband, guilty of dishonesty and fraud towards his creditors by issu-
ing to them worthless checks, and guilty of making false representations to
his wife as to his debts, but who does not thereby intend to annoy or injure

her is not guilty of such extreme cruelty as justifies a divorce to the wife, suffering mentally and physically in consequence of his acts, since such suffering, to justify a divorce, must have been induced by the voluntary and conconscious act of the husband, and must result from direct acts of the husband on the mind of the wife; "extreme cruelty" being the infliction of grievous bodily injury or grievous mental suffering by one party to the marriage on the other (citing 3 *Words and Phrases*, *p*. 2630).

(<em>March</em> 25, 1911.)

PENNEWILL C. J., and CONRAD and WOOLLEY, J. J., sitting.
*William G. Jones, Jr.*, and *David J. Reinhardt* for plaintiff.
(The defendant was unrepresented by counsel.)
Superior Court, New Castle County, March Term, 1911.

ACTION FOR DIVORCE (No. 50, November Term, 1910), on the ground of extreme cruelty, the character of which, without any alleged acts of violence, is set out in the petition, filed by the plaintiff and quoted in the opinion of the court. The question presented was whether a divorce can be decreed for extreme cruelty, based on the ground that the husband was guilty of dishonesty and fraud towards his creditors by issuing to them worthless checks, and of making false representations to his wife as to his debts, causing his wife great physical and mental suffering in consequence of such acts.

PENNEWILL, C. J., delivering the opinion of the court:
The plaintiff in the above stated case preferred her petition to this court praying for a divorce from her husband on the ground of extreme cruelty. The acts complained of and relied upon to establish extreme cruelty consisted of a course of conduct on the part of the defendant covering five years of their married life, and are fully and clearly set out in said petition as follows:

"That during the cohabitation which followed the said marriage upon divers occasions between the said twenty-eighth day of June, A. D. 1905, and the first day of April, A. D. 1910, the said defendant did treat your plaintiff with extreme cruelty such as to endanger the life or health of your said plaintiff, and did render cohabitation unsafe.

"That said defendant did by a course of conduct on his part, commencing some time during the month of July, A. D. 1905,

and continuing until the first day of April, A. D. 1910, cause your plaintiff great mental anguish and physical suffering. That said conduct of said defendant consisted among other things in obtaining money in divers amounts, in divers places and upon divers occasions, through and by means of worthless checks; one of said amounts of money having been obtained from some person unknown to your plaintiff, by said defendant in the manner aforesaid, some time during the month of July, A. D. 1905, while your plaintiff and said defendant were temporarily residing at Atlantic City in the State of New Jersey.

"That the person from whom said sum of money had been obtained by said defendant in the manner aforesaid thereafter, and while your plaintiff was residing with said defendant in the City of Philadelphia, and State of Pennsylvania, made frequent, repeated and insistent demands upon said defendant for the payment of said sum of money so obtained as aforesaid, and your plaintiff was thereby exposed to disgrace, publicity and humiliation and was for a long space of time thereafter, although wholly innocent of any wrongdoing on her part, in constant fear and apprehension of arrest and criminal prosecution, by reason of the aforesaid conduct of said defendant.

"That said defendant willfully permitted and allowed your said plaintiff to be and remain in said condition of fear and apprehension of arrest and criminal prosecution for a long space of time, to wit, for at least one year after the time when said money was obtained as aforesaid. That by means of the premises said defendant caused your plaintiff great mental anguish and she became and was for a long space of time thereafter seriously ill.

"That while your plaintiff and her said husband, said defendant, were boarding in said City of Philadelphia, on or about the first day of October, A. D. 1906, said defendant, under the pretense of paying a certain bill for board for your said plaintiff, gave a worthless check in pretended payment of said bill to a certain Mrs. Greenwood in the City of Philadelphia aforesaid. That said Mrs. Greenwood thereafter made frequent, repeated and insistent demands upon your plaintiff for the payment of said check and said board bill. That at the time the said defendant gave the said

Mrs. Greenwood said worthless check, your said plaintiff was seriously ill, and that thereafter, and while your plaintiff was convalescing from said illness at the home of her parents in the City of Wilmington and State of Delaware, said defendant permitted and allowed your said plaintiff to suffer great disgrace, publicity and humiliation resulting from his aforesaid conduct, and said defendant did permit and allow your said plaintiff, although she was innocent of any wrongdoing, to be and remain constantly under the fear and apprehension of arrest and criminal prosecution for a long space of time thereafter, to wit, for at least the period of one year.

"That between the said twenty-eighth day of June, 1905, and the month of August, 1906, said defendant did, by means of a great number of worthless checks made by him, obtain divers sums of money, upon divers occasions and in divers places, without the knowledge of your said plaintiff. That thereafter this conduct on the part of the defendant did receive great publicity and notoriety by reason of various complaints made against said defendant and demands made upon your plaintiff for the repayment of said various sums of money so obtained by said defendant as aforesaid. That by reason of this course of conduct on the part of said defendant, and of the mental anguish and physical suffering resulting to your plaintiff therefrom, the health of your said plaintiff became seriously impaired, and your plaintiff was on or about the first day of November, 1906, forced and obliged to return to the home of her parents in the City of Wilmington and State of Delaware, where she remained for a long space of time in a nervous broken-down condition under the constant care of a nurse and physician. That during the time your said plaintiff, at the home of her parents, was ill as aforesaid, the said defendant willfully permitted and allowed your said plaintiff to be and remain under the constant fear and apprehension of arrest and criminal prosecution upon charges of obtaining and using the various sums of money obtained by said defendant by means of said worthless checks.

"That while your plaintiff and her said husband, said defendant, were residing in the City of Wilmington, in the State of

Opinion.

Delaware, at the home of her parents, on or about the first day of February, 1910, said defendant gave to a certain Mr. Williams, an automobile demonstrator, a certain worthless check, thereby obtaining from the said Wililams, by uttering the worthless check aforesaid, the sum of about forty dollars ($40.00). That during the said month of February A. D. 1910, the said defendant did obtain from the said Williams, by means of a worthless check as aforesaid, a further sum of money, to wit, the sum of thirty dollars ($30.00). That the said Williams, from whom the said several sums of money had been obtained by the said defendant in the manner aforesaid thereafter, and while your plaintiff was residing in the City of Wilmington and State of Delaware, made frequent, repeated and insistent demands upon said defendant for the payment of said sum of money and did continually and repeatedly threaten the said defendant with criminal prosecution, and your plaintiff was thereby exposed to disgrace, publicity and humiliation and was for a long space of time thereafter although wholly innocent of any wrongdoing on her part, in constant fear and apprehension of arrest and criminal prosecution by reason of the aforesaid conduct of said defendant.

"That said defendant willfully permitted and allowed your said plaintiff to be and remain in said condition of fear and apprehension of arrest and criminal prosecution for a long space of time, to wit, for at least six months thereafter. That by means of the premises said defendant caused your said plaintiff great mental anguish, from which mental anguish she became and was for a long period of time thereafter seriously ill, so that it became necessary for your said plaintiff to have medical attendance.

"That said defendant upon numerous occasions during the period extending from the date of his marriage until the first day of April, A. D. 1910, has made false statements to your plaintiff and has deceived her, and has in divers ways treated her with extreme cruelty such as has endangered and impaired her health and has rendered cohabitation unsafe.

"That by reason of said defendant's cruel conduct towards your plaintiff she has on divers occasions been compelled to leave the home of said defendant and seek the protection and assistance

of her parents, but has been induced to return to cohabitation with said defendant by his solemn promises that he would treat her kindly for the future; that in consequence of her said husband violating his said promises and continuing to treat your plaintiff with said extreme cruelty, your plaintiff was compelled on the first day of April, A. D. 1910, to seek the protection and assistance of her parents, and has never since that date resided or cohabited with said defendant."

The allegations contained in the petition were substantially proved at the trial. The defendant made no defense whatever to the action, and in fact did not appear, either in person or by attorney

The sole question to be determined by the court, is whether, upon the facts set forth in the petition, the defendant has been guilty of extreme cruelty within the meaning of the law of this state and whether the plaintiff is, therefore, entitled to a divorce.

It may be conceded that the testimony produced by the plaintiff establishes a case that entitles her to a divorce if dishonesty, deceit and fraud on the part of a husband towards his creditors, and false representations and broken promises to his wife respecting his debts, can be regarded as constituting "extreme cruelty" within the meaning of the law.

Does such conduct on the part of one of the parties to the martial relation constitute such extreme cruelty?

The question has never been raised in this state before, but questions somewhat analogous seem to have arisen in other jurisdictions.

The question before the court may for convenience of treatment, be subdivided thus:

*First.* Whether under the laws of this state a divorce can be decreed for extreme cruelty, when it is not shown that any acts of personal violence have been committed, or even threatened.

*Second.* Whether the facts proved are sufficient to sustain a decree for divorce on the ground of extreme cruelty, if acts other than physical violence constitute ground for a divorce.

It appears to be well-settled law in England and in some states in this country, that a divorce may be decreed for extreme

cruelty even though no acts of personal violence were committed or threatened.

*Keezor on Marriage and Divorce*, § 112, says: "Extreme cruelty is the infliction of grievous bodily injury, or grievous mental suffering, by one party to the marriage upon the other." *Cyclopedia of Law and Procedure, Vol.* 14, *p.* 603, and cases there cited; *Volume* 3 of *Words and Phrases Judicially Defined,* § 2630; *Amer. & Eng. Ency. of Law, Vol.* 9, *p.* 788, and cases cited.

While it is true that in some states the doctrine that a divorce can be decreed only for extreme cruelty and when acts of personal violence are shown to have been committed or threatened, has been repudiated, it is not necessary for the court to determine in the present case whether the rule declared in such states shall be recognized here or not. Such rule may be appropriately termed the modern doctrine in respect to extreme cruelty in divorce cases. In some jurisdictions it is the result of statutory enactment, and in others of judicial decisions based upon reason and principle.

Mr. Bishop, in his work on *Marriage, Divorce and Separation,* defines cruelty as follows:

"Cruelty is any conduct in one of the married parties which, to the reasonable apprehension of the other, or in fact, renders cohabitation physically unsafe to a degree justifying a withdrawal therefrom.    *   *   *

"Cruelty is not infrequently said to be either actual violence, endangering life, limb or health, or conduct creating a reasonable apprehension of such violence. But there are forms of physical injury involving no violence, actual or apprehended; and we shall see that any one of these is equally legal cruelty. Moreover the danger must be adequately serious.   *   *   *   The conclusion of the whole matter is, that to authorize a divorce for the husband's cruelty, he must through some volition or series of volitions have given being to words, or acts, or both, contrary to the duties of the marriage, creating in fact, or to the reasonable apprehension of the wife, a danger to her physical security or health should cohabitation continue. As the law does not concern itself about trifles, the wrong and the danger must be serious and grave.

"In England and some of our states, the doctrine to which not an exception could easily be found, is abundantly established that the apprehended harm must be bodily, including detriment to health, in distinction from what is endured only by the mind, or mere mental suffering. And the explanation seems to be that in cases of mental pain and suffering 'the court has no scale of sensibilities by which it can gauge the *quantum* of injury done and felt'." *Sections* 1531, 1532, 1544, 1547.

Many courts, however, have been so strongly impressed with the belief that mental anguish and suffering caused by the voluntary conduct of the husband may, equally with personal violence constitute extreme cruelty, that they have sought for, and found, a way of so holding without violating the rule of *stare decisis*, and repudiating the doctrine that extreme cruelty exists only when personal violence is committed or threatened.

Mr. Bishop says, in his work above referred to, at *section* 1552: "Without thinking, or blinded by the physiological ignorance of former times, judges have assumed that mental anguish has no influence on the bodily health. Under the modern enlightenment we may well deem it, when deep and protracted, as dangerous to the physical security as blows, and to occupy the like ground in the evidence of cruelty. This is a question of fact, though of this fact the court may as well take judicial notice as of the effect of blows. But the rule of *stare decisis* applies only to law, not to fact. * * * It is abundantly settled that injuries to the body through the mind, if truly so inflicted, are as effective in cruelty as any other. Therefore if, in a particular case it is the opinion of the court or jury determining the fact that the wife's health is in danger from ill conduct of the husband addressed primarily to the mind, she should have her divorce."

And so it has been held in many cases in this country and in England that when the ill conduct complained of affects the mind, and through the mind impairs the health of the body and renders cohabitation unsafe, a divorce may be decreed consistently with the rule which requires that the injury shall be to body and not to the mind alone.

As we have already said, it is not necessary in the present

case to approve or disapprove of such decisions, or to express any opinion respecting the modern doctrine of extreme cruelty, because, assuming it to be sound and proper, the question remains, should a divorce be granted the plaintiff under the facts proved?

What kind of mental suffering will be sufficient? What shall be its extent? How must it be caused?

Certainly it must be induced by the voluntary and conscious act of the husband. Must it not also be the result of some direct acts or words of the husband upon the mind or person of the wife?

There is nothing in the testimony to show that the defendant ever intentionally injured his wife mentally or physically. Indeed, it was not proved that he at any time spoke an unkind word to her, and it is not pretended that he committed or threatened her with any violence whatever. The worst he did to his wife directly was to decive her by making false representations respecting his creditors, and false promises in regard to the payment of his debts. We think no case can be found where it was held that deceit and falsehood amounted to extreme cruelty, and we do not understand that such a contention is made here. It is insisted, however, that the defendant's treatment of his creditors was so shocking, reprehensible and fraudulent as to cause great mortification, humiliation and distress to the feelings of his wife. That such creditors were so incensed on account of the defendant's fraud that they importuned the plaintiff to pay their claims, and on one or two occasions threatened to seize her property or have her arrested if she did not do so. That because of such treatment, insults and threats the plaintiff's health became impaired to such an extent that she was forced to leave her husband—cohabitation with him being unsafe. But it nevertheless appears that all of the defendant's bad conduct was towards his creditors and not his wife. He was a thoroughly bad and dishonest man in respect to the payment of his debts, but he was not bad or even unkind in his relations with or conduct towards the plaintiff. It is true the effect of his treatment of his creditors was, according to the testimony, injurious to his wife mentally and physically, and such as to endanger her health. But we do not understand that the courts

anywhere have gone so far as to hold that a husband's conduct towards a third person can be regarded as extreme cruelty to the wife unless it was designed to annoy and injure the wife, or unless the third person stands in such relation to the wife as that she will naturally be affected by such conduct, or the acts complained of were a violation of the marital relation and integrity.

In reason, Mr. Bishop says, it is not absolute and direct cruelty to a wife to ill treat a third person, and still there may be such a connection between her and the third person, or the ill treatment may be of such a sort, that considered in all its circumstances it will show the wife to be in peril.

The learned writer then proceeds to give some illustrations from decided cases to support his text:

Debauching a woman servant, and making a brothel of his own house, has been held to be brutal conduct on the part of the husband of which the wife had a right to complain.

Where a husband, to harass his wife, ill treats a child, or other relation of hers, such conduct has in some cases been regarded as cruelty to her, though not always sufficient in itself.

We will not undertake to review all the cases cited by the plaintiff, which we think are perhaps the strongest that could be found in support of her contention.   But we will briefly refer to the leading authorities on plaintiff's brief—those upon which much reliance is placed.

In the case of *Carpenter v. Carpenter*, reported in 30 *Kan.* 712, 2 *Pac.* 122, 46 *Am. Rep.* 108, the acts complained of were the sending of anaonymous letters to different persons by the defendant charging her husband with infidelity.   It was insisted that the sole object of the defendant in sending the letters was the breaking up of a friendship existing between her husband and another family.

But the court said: "We must decide the case upon the theory that her object in preparing and sending these anonymous letters was just what would be the probable and natural result of preparing and sending such letters;   *   *   *   and that she intended the natural and probable consequences of her own acts."

In the case of *Flemming v. Flemming*, 95 *Cal.* 430, 30 *Pac.*

566, 29 *Am. St. Rep.* 124, the husband was charged with attempting to commit a felonious assault upon a servant. It was held that, "his conduct being voluntary and inconsistent with marital integrity, it is conclusively presumed that he intended the natural and ordinary effect upon his wife."

The case of *Craig v. Craig,* 129 *Iowa* 192, 105 *N. W.* 446, 2 *L. R. A.* (*N. S.*) 669, was one in which the defendant, who was a school director, took to board with him a young school-teacher. A warm attachment sprang up between them which ripened into love. They declared their feelings towards each other in the presence of the wife, and the defendant repeatedly stated to his wife that he did not love her, could not live with her, and had found one whom he loved better than her.

The court said: "Surely the conduct above described constituted such cruel and inhuman treatment as entitled the plaintiff to a divorce."

Another case was one in which there were violent scenes between the husband and wife, and the husband threatened repeatedly to remove their child from his wife's custody.

In another case it was shown that the husband treated his wife in a cold and distant manner and refused to speak to her, except in anger, for a period of three months.

Other cases were cited, in which, because of words or threats, there was reasonable apprehension of danger to life or health. The remaining cases on plaintiff's brief, with one exception, were analogous in principle to some of those to which we have referred.

The exception was a case in 66 *N. H.* 600, 23 *Atl.* 362, 15 *L. R. A.* 121, 49 *Am. St. Rep.* 632 (*Robinson v. Robinson*), in which a divorce was granted because the wife of the plaintiff became a healer in the Christian Science Church, and persisted therein against the remonstrances of her husband who was a druggist.

In this case the New Hampshire court went as far perhaps as any other court has ever gone in granting a divorce for extreme cruelty, and much farther than a Delaware court can be expected to go.

We have not been able to examine the New Hampshire statute but have found that the provision respecting cruelty in

39

the statute laws of some states, notably California, Missouri, Massachusetts, Wisconsin, Louisiana, Texas, and others, are more liberal than our own. The provision in the Delaware law is as strict and exacting as can be found in any state.

As a result of a careful examination of the cases cited by the plaintiff, it may be said they show only this: That there may be cruelty sufficient to justify divorce without personal violence.

Certainly there is no similarity either in their facts, or in the principle involved, between those cases and the one before us.

At *section* 1550 Mr. Bishop, in speaking of what will not constitute cruelty, says: "Neither is the commission of theft, forgery, or other crime sufficient, since this is an infraction of the husband's duties to society, not an outrage inflicted specially on the wife."

It seems to us that this is a very correct statement of the law, and is peculiarly applicable to the present case. The worst that can be said of the defendant's conduct, is that he perpetrated fraud upon his creditors by giving them worthless checks. It does not appear that he intended to annoy, harass or injure his wife by so doing; and we are not satisfied from the testimony that it was his purpose to force her on her father to pay his debts. The evidence does not show that he at any time sent his creditors to her, or acquiesced in the annoyance they gave her.

What would be the effect of granting a divorce in this case? Would it not be to throw wider open the door to divorce than it has ever been in this state? Would we not enlarge and extend the scope of extreme cruelty beyond anything that could have been in the contemplation of the Legislature when they enacted the statute? If a divorce may be decreed on the facts proved in this action, could it not be reasonably expected in every case where the husband had committed a crime of any kind, or had acted in a dishonorable manner towards third persons, if it should be shown that the effect of his conduct had caused the wife mental anguish and pain to such an extent as to endanger her life or health or render cohabitation unsafe?

Mr. Bishop, in a note to *section* 1532 of his work referred to, says:

"The above cited case of *Evans v. Evans*, decided by Lord Stowell in 1790, is one of the master productions of his luminous intellect. It has always been regarded as the leading authority on this subject, approvingly commented upon in almost every subsequent decision, English or American. The following most material passage has in this way gained almost the weight of a statute; and though its leading principles will be found interspersed through the text of this chapter, it may be profitably read here. 'What is cruelty?' In the present case it is hardly necessary for me to define it; because the facts here complained of are such as fall within the most restricted definition of cruelty; they affect not only the comfort, but they affect the health, and even the life of the party. I shall therefore, decline the task of laying down a direct definition. This, however must be understood, that it is the duty of courts and consequently the inclination of courts, to keep the rule extremely strict. The causes must be grave and weighty, and such as show an absolute impossibility that t h duties of married life can be discharged. In a state of personal danger no duties can be discharged; for the duty of self-preservation must take place before the duties of marriage, which are secondary both in commencement and obligation; but what falls short of this is with great caution to be admitted. The rule of *per quod consortium amittitur* is but an inadequate test; for it still remains to be inquired, what conduct ought to produce that effect, whether the consortium is reasonably lost, and whether the party quitting has not too hastily abandoned the consortium. What merely wounds the mental feelings is in few cases to be admitted, where not accompanied with bodily injury, either actual or menaced. Mere austerity of temper, petulance of manners, rudeness of language, a want of civil attention and accommodation, even occasional sallies of passion, if they do not threaten bodily harm, do not amount to legal cruelty; they are high moral offenses in the marriage state undoubtedly, not innocent surely in any state of life, but still they are not that cruelty against which the law can relieve. Under such misconduct of either of the parties, for it may exist on one side as well as on the other, the suffering party must bear in some degree the consequences of an inju-

dicious connection; must subdue by decent resistance or by prudent conciliation; and if this cannot be done, both must suffer in silence.    And if it be complained that by this inactivity of the courts much injustice may be suffered, and much misery produced, the answer is that courts of justice do not pretend to furnish cures for all the miseries of human life.    They redress or punish gross violations of duty, but they go no further; they cannot make men virtuous; and as the happiness of the world depends upon its virtue, there may be much unhappiness in it which human laws cannot undertake to remove.    Still less is it cruelty where it wounds, not the natural feelings, but the acquired feelings, arising from particular rank and situation; for the court has no scale of sensibilities by which it can gauge the *quantum* of injury done and felt, and therefore, though the court will not absolutely exclude considerations of that sort where they are stated merely as matter of aggravation, yet they cannot constitute cruelty where it would not otherwise have existed.

"These are the negative descriptions of cruelty; they show only what is not cruelty, and are yet perhaps the safest definitions which can be given under the infinite variety of possible cases that may come before the court.    But if it were at all necessary to lay down an affirmative rule, I take it that the rule cited by Dr. Bever from Clarke, and the other books of practice, is a good general outline of the canon law, the law of this country, upon this subject.    In the older cases of this sort, which I have had an opportunity of looking into, I have observed that the danger of life, limb or health is usually inserted as the ground upon which the court has proceeded to a separation.    This doctrine has been repeatedly applied by the court in the cases that have been cited. The court has never been driven off this ground    It has been always jealous of the inconvenience of departing from it, and I have heard no one case cited in which the court has granted a divorce without proof given of a reasonable apprehension of bodily hurt.    I say an apprehension, because assuredly the court is not to wait till the hurt is actually done; but the apprehension must be reasonable; it must not be an apprehension arising merely from an exquisite and diseased sensibility of the mind.    Petty

vexations applied to such a constitution of mind may certainly in time wear out the animal machine, but still they are not cases of legal relief; people must relieve themselves as well as they can by prudent resistance, by calling in the succors of religion and the consolation of friends; but the aid of courts is not to be resorted to in such cases with any effect." *Evans v. Evans*, 1 *Hag. Con.* 35, 4 *Eng. Ec.* 310, 311.

This exposition of the law by Lord Stowell in the main, commends itself very strongly to our minds as conservative, sound and safe.

No divorce has been heretofore granted in this state on the ground of extreme cruelty under our statute, unless personal violence, or some revolting act equivalent thereto was shown, or a reasonable apprehension that such violence would be inflicted.

We do not say that there may not be a case of mental anguish and pain, caused intentionally, consciously and directly by one of the parties to the marriage relation, and of such character and extent as to endanger the life or health of the other, or render cohabitation unsafe, and thereby justify a divorce. But such a case is not now before us, and we express no opinion thereon. We do say, however, that the facts proved in the present action do not establish extreme cruelty within the meaning of the statute, and a decree *nisi* is therefore refused.