## A vs. A.

(*June* 6, 1945.)

TERRY, J., sitting.

*Ernest V. Keith* for the plaintiff.

Defendant appeared in Person.

Superior Court for Kent County, No. 21, April Term, 1945.

TERRY, J.:

The plaintiff preferred her petition to this Court praying for a divorce from her husband on the ground of extreme cruelty. The behavior complained of consists of a course of conduct on the part of the defendant covering the last eight months of their married life.

The petition is long. The allegations set forth in the petition are in the usual form, and it will suffice to say that they are adequate.

The plaintiff contends that she and the defendant were married on June 16, 1938, and since the spring of 1940 have lived together in this county as husband and wife; that during the past five years the defendant has denied to the plaintiff that ordinary or reasonable amount of affection as evidenced by marital intercourse, and during the preceding eight months prior to the filing of this petition has completely refused the plaintiff that most intimate association which she contends forms one of the fundamental reasons for the marital relationship to exist. The plaintiff contends that by reason of this refusal on the part of the defendant she has become irritable, that she suffers from insomnia, and that her nerves have completely broken. She contends that the defendant is physically able to share with her the intimacies referred to, and that his refusal so to do is not justified either in fact or in law; rather, she contends that his refusal springs from his thought that such conduct between husband and wife is disgusting and repulsive; and even that it is unnecessary in so far as it relates to the compatibility that should properly exist between the parties and to the happiness of their married life.

Subparagraph (d) under Paragraph 3499 of the *Revised Code of Delaware* 1935, recites as follows: "Extreme cruelty, on the part of either husband or wife, such as to endanger the life or health of the other party or to render co-habitation unsafe."

Two questions are presented: (1) Is subparagraph (d) of Paragraph 3499 to be construed so as to include only that type of cruelty that is occasioned by personal violence? (2) Does the denial such as in this case when accompanied or resulting in a nervous breakdown on the part of the one offended constitute such cruelty as to come within subparagraph (d) of Paragraph 3499, aforesaid?

It must be said that the general impression of the bar of this State concerning extreme cruelty as intended under

the statute is as follows: That type of cruelty that is occasioned by personal violence. However, to me the phrase as employed does not necessarily imply physical violence, though it may include it. Other phases of behavior may work injury as deplorable as violence to the person. In fact, I can conceive of no form of cruelty that is more savage in its nature than the torture evidenced by sadism where gratification is obtained by torturing a loved one; and even though it is my opinion that mental anguish and pain caused and directed by one of the parties toward the other and of such character and extent as to endanger the life or health of the one offended or to render cohabitation unsafe, will justify a divorce on the ground of extreme cruelty, yet I am not unmindful that divorce should not be a panacea for the infelicities of married life. Nor am I unaware that if disappointments, suffering, and sorrow be incidents to that relationship, they must be endured, as the marriage yoke, by mutual forbearance, must be worn even though it ride unevenly and has become burdensome. This is so because public policy so dictates. Courts must keep in mind the sacred character of the marital relationship and its influence on the happiness and purity of society as well as upon individuals. Each case, therefore, must be judged upon its own particular facts and circumstances, for, as deplorable as it may be from the infirmities of human nature, cases occur where the wilful disregard of marital duty, whether by acts of commission or omission, result in a condition so serious that a continuance of cohabitation in marriage cannot be permitted with safety to the personal health of the injured party.

Question (1) is one of first impression in this State, unless it be said that the Court in the case of *McClenahan v. McClenahan*, 2 *Boyce* 599, 80 A. 677, intended to say that the type of cruelty necessary under the statute was not confined to personal violence.

Under (2) an act of omission on the part of the husband resulting in the wife's having a complete nervous breakdown forms the basis of the cruelty complained of.

Marital intercourse between husband and wife is one of the most critical subjects Courts have to deal with, and what may or may not amount to extreme cruelty on the part of a husband toward his wife in the exercise of his marital rights is a question not only difficult but delicate.

Marital intercourse is only one marital right or duty. There are many other important rights and duties. The obligations the parties assume to each other and to society are not dependent on this single one. Many of these obligations—fidelity, sobriety, kindness, and others too numerous to mention—have legal sanctions and can be enforced, or their breach remedied by legal process. This obligation in question is of a nature so personal and delicate and dependent so much on sentiment and feeling that the Courts, reaching far into the privacy of domestic life, have stopped short of decreeing that the reasonable denial on the part of either party of submitting to marital intercourse is a ground in and of itself for a divorce based upon extreme cruelty.

One of the outstanding reasons for the existence of marriage is predicated upon the hope of procreation of children —the continuance of the race—and the prevailing view is to the effect that a complete refusal of marital intercourse on the part of the husband, even though it negates the wife's hope of posterity or otherwise, is not in and of itself a ground for divorce predicated upon extreme cruelty. 17 *Am. Jur.* 186; *Cowles v. Cowles,* 112 *Mass.* 298; *Ann. Cas.* 1918B, 493; *Note,* 14 *L. R. A.* 685; *Willis v. Willis,* 74 *W. Va.* 709, 82 *S. E.* 1092, *L. R. A.* 1915B, 770; *Schoessow v. Schoessow,* 83 *Wis.* 553, 53 *N. W.* 856.

As to whether or not such refusal will constitute a ground for divorce based upon wilful desertion for a period

of two years as defined by our statute (e) Paragraph 3499, *Revised Code of Delaware* 1935, see *Harrington v. Harrington*, 8 *W. W. Harr.* (38 *Del.*) 333, 192 A. 555; *Reid v. Reid*, 21 *N. J. Eq.* 331, 332; *Eshbach v. Eshbach*, 23 *Pa.* 343.

The question to be determined is this: Since the denial of marital intercourse standing alone is not sufficient, may a divorce be granted based upon extreme cruelty where it is shown that the denial has caused injury to the plaintiff either mentally or bodily, and where it is established that her life or her health has been endangered thereby?

My answer to this question is in the affirmative provided that the mental anguish or suffering complained of be found to be the sole and direct result of the denial and not merely a contributing cause thereof, and that the suffering must be of such consequence that in fact it must be said that the life or health of the offended party has been endangered thereby. Of course, such proof should be evidenced by medical testimony. This is so for the reason that speculation and conjecture must be eliminated; otherwise the procurement of divorces based upon the ground of extreme cruelty under the subject herein discussed would become simple and easy and afford a means of separation to all who desire it whatever the motive may be.

In the present case a duly qualified doctor of medicine testified in substance that he had attended the plaintiff for a period of approximately one year prior to the filing of her petition; that from his talks with her and his general observation he concluded definitely that she was and still is suffering from neuritis; that her home life with her husband was and still is not compatible, and that she was and still is worrying to a great extent over the fact that her husband had denied to her marital intercourse over a period of approximately eight months. To say that she was and still is suffering from a general nervous breakdown would best describe her condition. But the doctor stated that he could not testi-

fy that the nervous breakdown is due entirely to the denial on the part of the husband. The neuritis from which the plaintiff is suffering cannot be traced to any act or omission on the part of the defendant. Incompatibility can spring from many sources. It might grow out of the financial position of the parties. Its source might be found through the interference of a third person, and it often arises during the many phases of married life.

From the evidence produced I cannot escape the conclusion that the denial of the marital intercourse on the part of the husband was merely a contributing cause to her present condition, and, since it was not the sole and direct cause thereof, the prayer of the plaintiff's petition for a divorce must be denied.