MARTHA N. JACKSON, Defendant Below, Appellant, v. LEIGHTON JACKSON, Plaintiff Below, Appellee.

(*February* 14, 1962.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Thomas Herlihy, Jr.,* for appellant.

*George L. Sands* for appellee. *Carl W. Mortenson,* of Counsel.

Supreme Court of the State of Delaware, No. 36, 1961.

WOLCOTT, Justice.

This is an appeal from a judgment of the Superior Court granting a divorce to a husband on the ground of extreme cruelty. From this judgment the wife appeals.

The appeal presents one question only for our consideration. It is stated in the brief of the wife in the following language:

"Did the evidence adduced by the appellee [husband] entitle him to a divorce on the basis of extreme cruelty within the meaning of these terms as they are set forth in 13 *Del. C.* § 1522(4)?"

The language of 13 *Del. C.* § 1522(4) is as follows:

"Extreme cruelty, on the part of either husband or wife, such as to endanger the life or health of the other party or to render cohabitation unsafe."

At the opening of oral argument counsel for the husband presented a motion to dismiss the appeal on the ground that the record brought up by the wife was not complete since it did not include testimony of all the witnesses. Actually, only part of the testimony has been transcribed. It was therefore impossible to include all the testimony, not only in the appendices but in the record. The basis of the husband's motion is that since the question presented requires consideration of all of the evidence, the absence in the record of a major part of the testimony makes the question impossible of decison.

 However, the motion to dismiss was presented only after the husband had filed his brief directed to the merits of the appeal. In that brief certain factual statements were made as to the purport of the omitted testimony. We do not understand counsel for the wife to take exception to these factual statements but to concede that the absent testimony supports the factual statements made in the husband's behalf. Under the circumstances, therefore, we will assume that the record supports the factual statements contained in both the wife's and the husband's briefs, and will decide this appeal on the merits. We take this course for the reason that the husband's motion should have been filed in advance of briefing on the merits. We do not wish to be understood, however, as approving a practice in future appeals of forcing the Court to rely upon factual statements in the briefs without the

means to verify them by independent examination of the record.

Primarily, the question to be decided is one of fact. It is necessary, therefore, to recite the facts of this controversy. In so doing, we include the factual statements in the husband's brief.

These parties were married on August 26, 1950, it being the second marriage for each. The husband was a widower, while the wife's first marriage had ended in divorce. The husband had two minor daughters by his first marriage who lived with these parties after their marriage.

The husband is a graduate chemist and holds a responsible position with a local company. He is sincerely religious and of a mild and even temper. He is active in civic affairs, does not swear, is a member of the Methodist Church, teaches Sunday School, and has for two three-year terms been a member of the governing body of his church.

The wife is a high school graduate, is not a sincerely religious person, is ill-tempered, has little or no respect for her husband, and is very profane in her speech.

Immediately after their marriage discord between husband and wife commenced, which grew over a ten-year period until its culmination on Sunday, May 22, 1960, on which day the immediate events took place leading to the final separation.

During the course of this ten years of discord the wife on numerous occasions struck, scratched and gouged the husband about his face. On at least two occasions she so marked him that he was forced to request a few days vacation from his office. On several different occasions she tore clothes from his back in the presence of his daughters; choked him with his necktie; kicked him with such force as to leave permanent scars; struck him about the head with the heel of a shoe; struck him with an electric fan; gave him a black eye;

backed him into a corner with a butcher knife; struck him with her fist without warning while in bed in the dark; threw hot coffee at him and, in addition, on many occasions verbally abused him, profanely and obscenely. In addition to all this, on various occasions she attempted to cut him with the serrated edge of a handsaw; threatened to hit him on the head with a large glass coffee jar, a milk bottle and a hot electric iron, and, on one occasion while he was upholstering a chair, threatened to hit him with a claw hammer.

These parties owned a boxer dog which, in the course of arguments between the parties, took the side of the wife and attacked or threatened the husband. Indeed, the dog did the same thing no matter with whom the wife was arguing. On at least three occasions, as a result of dog bites, the husband required medical treatment. A constantly recurring threat by her was to sic the dog on him.

The wife mistreated the two daughters of the husband, both by unreasonable discipline and also physical punishment. Such treatment ultimately caused the eldest daughter to leave the home of her father.

On numerous occasions during the course of the marriage the husband tried to persuade the wife to co-operate with psychiatrists and with their minister in an attempt to straighten out the discord between them. This, the wife refused to do.

The husband was not a man of robust health. He suffered from nervous tension and incipient stomach ulcers. He constantly worried about his health. The wife refused to take seriously his state of health. In private and in public she ridiculed it. She habitually and sarcastically referred to him as "white face", "pale face", "baldy", "old man" and "deefie" in mocking reference to a defective ear condition he suffered from. With respect to his health the husband describes himself as a "worry wart" and as a person subject to nervous tensions. This diagnosis is confirmed by the medical testi-

mony. The medical testimony is to the effect that prior to the marriage the husband's health was fairly good, but that following the marriage he was in a constant state of turmoil, suffering evidently from a good deal of mental distress. As a result of this he began to develop duodenitis or an inflamed duodenum. For this condition his doctor prescribed a diet and various medications, the necessity for which was scoffed at and ignored by the wife.

The husband's doctor described his general physical condition throughout the period of the marriage as becoming progressively poorer. The doctor thought fundamentally that this was a psychosomatic condition brought about by his state of anxiety caused by his tumultuous married life. The medical testimony is positive that his nervous state impaired his physical health and that it could, conceivably, ultimately cause death.

The exact events which led to the separation of these parties occurred on Sunday, May 22, 1960. On that day the husband took his mother-in-law, who lived with them, and his youngest daughter to church. The wife did not accompany them. Upon their return to the home, the wife commenced what is described as a "verbal tirade" against the husband's youngest daughter, telling her that she had work to do in the kitchen.

It appears that this daughter had washed the kitchen floor the day before and had not done it to the satisfaction of the wife.

The upshot of this episode was that the husband's daughter dissolved into tears because of the tension created, and because of the fact that before going to church the wife had slammed the daughter's head against a cupboard. Because of the daughter's tears the wife struck her in the face. The result was that the boxer dog had to be held by the husband in order to prevent its attacking the daughter. The husband

protested, whereupon the wife struck him in the face while he was holding the dog away from his daughter. In trying to protect himself, he let go of the dog which then attacked him. It was necessary for him to pry the dog's jaws off his body. He thereupon "decided that I had enough so I told my daughter to get out of the house, and I got out, and that was it."

From the foregoing statement of facts, it is obvious that this was not a happy home and that, at least, these parties were incompatible. The trial judge was of the opinion that these facts demonstrated more than mere incompatibility. He was of the opinion, and we agree with him, that the turmoil and tension and physical abuse between these parties was the fault of the wife. Not only does it seem clear that the unreasonable conduct of the wife resulted in temporary physical injury to the husband, but adversely and seriously affected his health as well. Under the circumstances, therefore, we think without doubt that she had made, for this man, further cohabitation with her unsafe. In our opinion, therefore, as in the opinion of the trial judge, the actions of the wife amount in law to extreme cruelty as that phrase is used in 13 *Del. C.* § 1522(4).

We think the circumstances of this case are not unlike those of *Chambers v. Chambers*, 7 *Boyce* 554, 109 *A.* 481, in which a divorce was granted. The evidence in that case did not show as long continued or as serious acts of bodily injury as does the evidence in the case at bar. The court in the *Chambers case*, however, said that the evidence "does show a reasonable and continuous apprehension of such injury", to such a degree as to endanger the health of the plaintiff and to render cohabitation unsafe, and granted a divorce on the ground of extreme cruelty. To be sure, the plaintiff in the *Chambers case* was a wife, but the ground for divorce is available to either spouse.

In the case at bar for ten years this husband has lived in a state of constant anxiety and apprehension of bodily injury. Indeed, he has actually suffered bodily injury. Under the circumstances, we have no doubt but that extreme cruelty has been proven and that the granting of a divorce was more than justified.

The wife argues that extreme cruelty under the statute has not been proven because it is apparent that the husband was not afraid of her and that he was not in fear of his life. We think the statute does not require that the injured party be put in fear of his life to justify a finding of extreme cruelty. It is true that the husband is physically larger than the wife and, it might be assumed, could have asserted that physical superiority to repel his wife's violence. The evidence is, however, that the husband did not retaliate upon the wife in kind, but on occasion used his strength merely to ward her off or hold her arms to prevent further aggression on her part. That this is the fact may be surprising. It certainly paints the husband as a man of almost superhuman forbearance, but this apparently is what he was. It hardly seems justified for the wife now to complain of his refusal to meet force with greater force, and to retaliate upon her in a manner which a less patient man would no doubt have considered just chastisement.

The physical injury suffered by the husband makes inapplicable the argument made on behalf of the wife, based upon *A. v. A.*, 3 *Terry* 605, 43 *A.* 2d 251; *X. v. X.*, 4 *Terry* 361, 47 *A.* 2d 470, and *McClenahan v. McClenahan*, 2 *Boyce* 599, 80 *A.* 677, to the effect that mere mental distress not caused by physical violence does not establish a finding of extreme cruelty. We frankly do not understand the argument in any event because this record is replete with acts of physical violence committed by the wife. Having held that it is not necessary for the violence to put the injured party in fear of his life, it follows that extreme cruelty may consist of any

physical act or acts which impair the health of the injured party or renders cohabitation between the parties unsafe for him.

*Cannon v. Cannon,* 7 *Terry* 237, 82 *A.* 2d 737, is cited by the wife in support of an argument that the husband has not proved extreme cruelty because of his lack of fear of her. The argument is based upon the fact that after the separation the husband on two or three occasions took the wife in his automobile shopping and to the veterinarian with the dog. It appears, however, that he did this on advice of counsel, and from the realization that the wife was otherwise without transportation. We may assume that he did not actually fear her, but this does not destroy the plain fact that her physical abuse of him adversely affected his health and rendered further cohabitation unsafe for him.

In the *Cannon case* the circumstances of physical abuse by the defendant wife of her plaintiff husband were of far less serious a nature than in the case at bar. In addition, the parties cohabited for several months after the last act of physical violence by the wife. The case is not at all in point.

The judgment below is affirmed.